N2014-1019, both cases, the eDigital versus Pantech and eDigital versus FutureWay technology. Thank you for your patience. Mr. Handel, please. Am I saying your name right, Handel? Yes, Your Honor. Thank you. May I begin? Yes, please. May it please the Court. Having listened, it's clear that the Court reads the briefs and I'm always amazed at how many different ways lawyers can come about saying the same thing multiple times. So I'd throw it to you first to see if there are any questions that are burning a hole in your heads that you'd like me to address. Well, that's a good idea. With respect to the question of whether we should actually look at the reexamination history, I understand your argument that, well, that should wait. That should wait until the markman process. But in some ways, that sort of requires us to put on blinders. And assuming that we disagree with that process-oriented argument and think that where it's pretty clear on its face what the reexam history says or the reexam prosecution history says, wouldn't we be permitted to say, if there's nothing in the reexam that really impacts the particular limitation or claim term at issue, that we shouldn't waste the judge's time to make or do a markman hearing? And I appreciate that point of view. It's the point of view that the appellees have repeatedly enforced. I think the question is a little bit more basic than that, in that it's not that you have to have blinders on, but if you've got blinders on, you need to make sure that you're encompassing the totality of the facts and circumstances before you render a determination in that regard. The procedural history of this case that Judge Sabraw had was that there was no discovery. There had been no discovery. There had been no expert analysis. I think the preliminary infringement contentions on exemplar products had only first been put forth by the plaintiff. We had no feedback. I guess I don't understand. What does any of that have to do with whether this identical issue was previously decided by Colorado? The issue is, in my view, whether Judge Krieger in Colorado, had she had available to her the reexamination history, would she have had to consider it as a part and parcel of her claim construction? I want to go back to where I was. Even if we think the Delaware Court's approach in Golden Bridge is the best practice, it's a better way of doing it. Okay. Which I agree. Okay. But the question is, is it the only way to do it? What I want to know is, I can't really bear it out in your brief what you think in the new reexam history would make a difference. I see. And the reason I'm reluctant to enter into that debate, because I don't want to move my client into a claim construction analysis, in the second case, prematurely. And what I would have to do, is I would have to point you to the additional diagrams, which you've obviously seen from the briefs, the additional language from the reexam history, which you've obviously read. But then the interpretation and the meaning of all that, within the context of the new claims, is something that would also be subject to potentially expert analysis and some discovery. But the precise language that we're talking about. Right. How would that impact it, and what in the reexam history impacts the analysis of that precise language? I understand you're hesitant to go there, but I think you're going to have to. Well, to be perfectly honest, the addition of the term microprocessor in connection with the claim element that was the subject of the claim construction for Judge Krieger, in my view, is an issue, is an additional matter that needs to be considered within the construct of that entire limitation, and within the construct of the entire claim. That word, aside from the other words and the other limitations that were added, is something that would have to be considered. And the premise... But the Colorado Court expressly included in former Claims 15 and 16, those were the dependent claims of the same patent, which expressly contains the microprocessor limitation, and the Colorado Court expressly held that the addition of this identical microprocessor limitation doesn't change the nature of the memory that has to be employed, because a microprocessor can have an architecture which employs flash memory. It's not inconsistent. And so the Colorado Court addressed precisely that issue as part of their analysis. Right. So how does the inclusion of the microprocessor claim limitation in new Claim 33 create an issue that wasn't already resolved by the California, or the Colorado Court? That's a very good question. The answer is that in the new Claim 33, the microprocessor, addition of that word microprocessor in the revised limitation relates to all control circuitry, which is a nuance that Judge Krieger didn't consider. Being a part of all control circuitry, it would by necessity include the use of RAM as a part and parcel of the microprocessor. The microprocessor, looking at the diagram, even though the declaration, I'll acknowledge the declaration from the expert in the re-exam, didn't specifically address the use of RAM, he did very specifically lay out RAM within a microprocessor as a part of control circuitry. So what we're doing here is we're doing a de facto claim construction of this new Claim 33, which our position is that the judge in Goldenbridge said, we'll have a claim construction. And Judge Sabraw, if this goes back to him. Can I ask you to further clarify? Because I don't, I need to understand the difference that you're saying exists from a technical capacity. I don't, old Claim 15 said, where in the control circuit includes a microprocessor having logic instructions for detecting and disabling circuits while maintaining other systems. How is the microprocessor as it was added to Claim 33 somehow different such that it would necessitate RAM rather than flash memory? Well, the claim itself does not talk in terms of RAM memory. The claim, new Claim 33 incorporates the term microprocessor as part of control circuitry. And the diagram that the expert at re-exam introduced showed the microprocessor and RAM as a part of the microphone functionality. So, it's a logical, a reasonable, and I don't want to go into claim construction on this term at this point because I think that was the problem down below. It is a reasonable assumption, reasonable conclusion to believe that in the re-exam, the examiner considered as a part of control circuitry now, RAM is involved in this microprocessor. That was not so clear in the former Claims 1, 19, 15. That was not so clear. And Judge Krieger was actually, if you read her, and I'm sure you have, it's in the brief, her analysis was a bit confused and she was a bit on the fence as to whether RAM is involved or RAM is not involved. She said, you know, granted that a freshman's knowledge of microcircuitry would lead one to believe that RAM is involved, and one skilled in the art might first be confused as to why RAM is not involved. Well, but didn't she conclude that even if one skilled in the art might think RAM was involved from the specification, Mr. Norris' statements and the statements made in the prosecution history nonetheless dispositively resolved as a matter of disclaimer whether or not RAM could be involved? I don't think she reached the level of disclaimer, but generally your interpretation is generally correct, that she concluded that RAM was not involved mostly from the statements, the testimony of Mr. Norris at that claim construction proceeding. But that also highlights the fact that that was a full claim construction proceeding where there was a detailed analysis, there was testimony taken. And I think the most important point here is... If the part that the word soul memory remains in the claims, I mean, if on re-exam you narrowed the claims and you made it something more specific, then we'd have a different analysis, but you left the soul memory limitation in there, right? Isn't that the heart of what we're talking about? The word soul memory is still in there, yes. And it is generally at the heart of what we're talking about, but around it are new terms, new words, new re-examinations. The re-exam soul memory was never addressed. Soul memory was not the gravamen of the re-exam. Going back to something that Judge O'Malley just said, the problem I'm having with your argument with respect to re-examination is that our precedent is pretty clear that re-examined claims are presumed to be narrower than the originally issued claims. How can you adding something in re-exam is going to broaden or encompass new claim terms that were not present in the originally issued claims? Right. The point here really is not, and I'm not advocating the ultimate construction of the those terms in the context of the entirety of the 774 patent. This is more basic than that. It's a question of how does a re-exam and re-exam material and newly issued claims, how do they interface with the concept of collateral estoppel? If we were to buy your argument, it seems to me that we would be creating a big loophole in the law. We would allow parties to get an adverse decision in this court, take it to re-exam, insert new claims that have nothing to do with what was a subject in the first case, and then come before us and say, look, we have a re-examination, we have new language, it'll fix the entire claim, and therefore there's no collateral estoppel. I hear your point, but I respectfully disagree. And the reason is that if you look back to what the judge did in Golden Bridge, he took the position that the basic concept of collateral estoppel doesn't apply here. Why should you give the judge at the lower courts a pass on not considering the totality of the re-examination and the file history that's newly created and any new claims or any new claim terms that are inserted in connection with the administration and the analysis of his case? That would be true if there was at least some mention, some connection in re-examination to the new term language going back to the term sole memory. And that didn't happen. There's just nothing there that I saw that would lead me to believe that the sole memory was even discussed or even present. The word itself, unfortunately, in my view, was not addressed or modified in the re-examination history. However, there was the addition of certain elements in the claim term. It's indisputable that microprocessor, being the key one, involves RAM. No, it's not undisputed. Microprocessors, like the Colorado court ruled, could employ flash memory. So it's not undisputed that the use of the word microprocessor necessitates RAM, nor is that actually technologically accurate. Well, correct. But the diagrams that were submitted in this particular case in support include a microprocessor that has an element of RAM in it. And so that's why it's undisputed in my point of view under the facts of this case that the microprocessor, subject to the re-exam, involved RAM. And my time is almost up. Yes, we should save some for rebuttal. But I'd like to make one point. That all of this is very appropriate to the 774, but I think it was completely and wholly inappropriate to extend the limitations of the 108 and grant collateral estoppel on the other patent that uses the same term. We understand those arguments. Okay. Mr. Patino, am I saying your name right? You are. Thank you, Your Honor. Mr. Patino. May it please the Court. And I'd also like to note for the bench that here with me today is Kevin O'Brien, who represents Pantech, as well as Hector Rivera, who represents GoPro. They've designated myself to argue for that case as well as this case for the Court's convenience. You got a short straw? Pardon? No, it's my pleasure, Your Honor. But if there are any specific questions as to GoPro or Pantech, they are available. Well, I will tell you that we appreciate your consolidation. Often everybody wants their two minutes of fame, and it becomes really a nightmare for us when you have five different people trying to come up and each speak for a minute or two. It's never productive. So this is a much better way to proceed. But can we do like we did with your friend on the other side and just go right into questions? Sure. I mean, why isn't it true that the approach, the more conservative approach of the Delaware Court, is really the better practice? Well, I think it's not a matter of better practice. I think it's a matter of what the law dictates. The District Court was entitled to review all relevant facts related to the issue of collateral estoppel. Mr. Handel himself submitted extensive briefing regarding the reexamination proceedings before the District Court so the District Court could make a full and accurate assessment as to whether there was anything in the reexamination that would impact the litigated issue that had been fully and fairly decided. And as was indicated earlier, these proceedings in Colorado were extensive, leading up to the Markman proceeding in 2011 with extensive testimony and documentation regarding the microprocessor-based system that they tried to convince the court in Colorado to have a construction other than the one they got. And the fact of the matter is that... But you would agree that in a normal circumstance, our requirement of claim construction would say you have to look at the entirety of the prosecution history, including any reexamination history, correct? Well, that's correct. You do need to look at the entirety of the record. But it's also correct that in Ohio Willow and in the aspects, eyewear cases, you had a consideration of claim construction for the purposes of deciding the issue of claim preclusion or issue preclusion. Well, Ohio Willow really wasn't a claim construction case, was it? It had to do with insolidity. Correct. And there were a lot of factual differences between that case and this one. I mean, they had the same parents, the same inventors. I mean, these are... If we're talking about the two patents here, the 108 as well, Ohio Willow is distinguishable. It's distinguishable, but there's one kernel that applies, and that kernel that applies, I think, most pressingly on the question we were just discussing is the fact that you can compare different claim terms in different patents, and they do not have to be identical. Yes, but they do have to be related patents. That's unequivocally clear from Ohio Willow as well as all of the cases in which we've adopted claim construction from a family of patents. So how do you justify here the 108 is unequivocally not related just because the specs are similar, there's some overlap in inventorship? Do you know what a quagmire you would create if we said now we want district courts to assess the extent of similarity between patents and or overlapping inventorship or otherwise, and then we're going to create collateral estoppel effects based on that similarity? I mean, the collateral estoppel rule is quite clear, identical. Well, and we have a very narrow situation here, which is somewhat unusual in the sense that the 108 itself demands that we consider the issue of the 774. No, where does it do that? Because it incorporates it by reference, the 774 is prior audit. It does more than that. The sole memory limitation in that patent defers completely to the 774 specification. Where does it say that? In the 108, where does it say that the sole memory limitation at issue here is the one incorporated by reference from the 774 patent? Because for incorporation by reference, our law has been crystal clear. You must be precise and specific about the exact matter that you're claiming to incorporate. First of all, the disclosure, the specification, not just in the prior audit section, references the 774 patent and incorporates it for the purposes of discussing the limitations which ultimately include the sole memory limitation. There is no written description that's not copied word for word from the 774 patent. Yes, but the Colorado court largely based its conclusion of sole memory being limited to flash memory, largely, on the disclaimer. The statement made during the prosecution history, not on a disclaimer found in the specification by that court, for example. So I think that the fact that they incorporate the spec of the 774 doesn't really help you, even if they incorporated the spec with regard to the sole limitation because what seemed to me to be a driving factor in the Colorado disposition was a statement in the prosecution history. But for purposes of issue preclusion, we're looking to see if it's substantially the same invention. We'll show the precise words from Ohio Willow. No, we're not looking to see if it's substantially the same invention. We're looking for issue preclusion. It's my understanding, under all of the regional circuit law, it's the same issue. Right, the same invention question is what Ohio Willow was looking at because they were looking at invalidity. There's no way that Ohio Willow overruled all of our case law that said each patent stands on its own. And when you have an entirely different prosecution history, how can we just ignore this? But it's not an entirely different prosecution history. The 108 in the Notice of Allowance, specifically the Patent Office itself said this is the same invention as the 774 patent. It specifically mentions the 774 patent. It's the same invention except for the second microphone. And when you see the side-by-side comparison, the Asserted Claim 2, it's substantially the same invention except the extra microphone, the same sole memory limitation. Except they're completely unrelated patents. So why would we import the disclaimer made in an unrelated patent to control the outcome or disposition of the interpretation in a different unrelated patent? It doesn't feel right. It doesn't feel right. Nor does it feel like collateralism. I would disagree that it's not right because what we're trying to do here is to prevent people from re-litigating issues they have fully and fairly litigated. And when this patent is deferring to the invention that is the 774 that's been fully and fairly litigated on the issue of the sole memory limitation, it would be inconsistent with the desire of the courts to prevent repetitive litigiousness on the same precise issue. When you apply the Ninth Circuit standard in terms of whether this is necessarily decided below, you consider is there going to be a substantial overlap in the evidence. And it's 100% overlap in the evidence. There are even times where we interpret the same word used in different patents, even in a related patent family differently. There's a presumption that we don't, but it turns on all of the intrinsic evidence as well as any relevant extrinsic evidence. And so what you're asking us to do is to essentially, in the context of collateral estoppel, do a full analysis of this alternative patent, including all of that. And that gets to be, it's not just a difference between what happened in Golden Bridge and what happened here with respect to the first patent. It gets to be a full claim construction analysis. And that's not collateral estoppel. But I think it's fair to hold the patentee to the representations of the patent office. It's fair to hold the patentee to the fact that they copied virtually word for word. But this isn't the same patentee. The patentee is the inventorship entity. Mr. Norris, who made the representations of PTO that got the verdict in Colorado that was the one you'd like to have enforced here, isn't the patentee. So even if I were thinking about equity, I wouldn't be inclined to hold this different inventorship entity to the same disclaimer statement made by the first inventorship entity. Mr. DeBurco, who is an inventor both in the 108 as well as in the 774, also supplied evidence in the 774 hearing. And so... But it wasn't the evidence that the Colorado court found. Well, the Colorado court found a series of things, ultimately, in support of its rulings. And we've submitted all those papers to the court in the appendix. But I think ultimately, when you look at the prosecution history of the 108, when you look at the specification, when you compare them side by side, they are commonly... Well, let's look at the specification. Look at figure 3 of the 108 patent. And the patent describes figure 3 as a preferred embodiment. And that figure clearly includes RAM memory. And does figure 4, which are completely new additions that aren't present in 774. But in the discussion regarding those particular figures, it is a discussion that does not relate to the sole memory limitation. There is no written support in the 108 for the sole memory limitation that is not directly from the 774 patent. It says in the discussion figure 3 and 4 are the present invention, columns 4 and 50. So, kind of hard for me to conclude if they're defining figure 3 and 4 as defining their claimed invention. And those figures expressly include RAM. That seems like a pretty critical difference between this patent and 774, vis-a-vis whether RAM is included. But the patent office ultimately characterized the invention as the same invention as the 774 patent, just with a second microphone. So, the patent office, having had all of the disclosure... We should let the patent office characterization trump the actual spec. I think the characterization would be relevant for the scope of the patent. It might be useful. You only have about four minutes left. If you would turn to 774. Did I cut you off? No, let's go ahead. Turn to the 774 patent. Tell us why you think that despite re-examination, there should be collateral estoppel even though it's a new and different claim. Right. Well, we had the full and fair litigation of the issue of the microprocessor below. But beyond that, when you look at the re-examination history, Bloom Engineering and the other cases from this court make clear that there's no substantial change in the claim scope at all when all you do is take dependent terms that are already in the dependent claims and then move them up into becoming independent claims. It doesn't have a different claim scope. And it can't be for the reasons that the panel discussed earlier with respect to the constraints of re-examination. But beyond that, this is ultimately the greatest example of the effort to re-litigate the issue. They want to now re-litigate everything that was before the Colorado court and do it again with respect to terms that have not been changed. This is a matter of do we want collateral estoppel to apply to prevent waste of judicial resources? And I think that's one of the objectives we're trying to prevent. What about the fact that the prosecution history at the re-examinal does include additional discussion of microprocessors or RAM? It only includes discussion of microprocessor only in the context of control circuitry. The drawings that are attached to the back of a declaration that was submitted by the expert, it's not in the declaration. It's just in the attachments. And plus, the court in Colorado ruled that insofar as these pictures hold RAM, or if there's any mention of RAM, it's the microprocessor that does not include RAM. In other words, one of skill in the art, I think the way the court put it, one of skill in the art would understand that a microprocessor could process RAM, but that one skill in the art reading the specification of the 774 patent would understand that it would exclude RAM. And you don't think there's anything in the re-exam prosecution history that would indicate otherwise? There's nothing that we've seen. There's nothing that has been presented to this court or to us for the re-examination. Are you saying that all microprocessors have to exclude RAM memory? No. Why wouldn't the addition of a microprocessor in re-exam raise the issue, open up the issue of whether RAM memory is inherently included or not? If it was an addition, a new addition, perhaps. But it wasn't an addition.  Wouldn't one skill in the art look at that and wonder, right? I'm sorry? Wouldn't one skill in the art look at the microprocessor addition and wonder whether this is operating on flash memory or RAM? No. If you look at the prosecution history, it's just like boom engineering where they brought up from the dependent claims the furnace and the radius. Bringing it from the dependent claims to the independent claims does nothing with respect to the claim scope. Thank you very much. Okay. May I? Yes, we'll give him two minutes for rebuttal. I've restored some of your rebuttal time. I appreciate it. Counsel will invoke bloom engineering and I just want to point out bloom engineering is an intervening rights case. The issue of preclusion had to do with damages and there was a lot of discussion about subsequent... It had to do with another topic. But if I can leave the court with just one point. Yes, I can understand the court's concerns over this particular matter, particularly since the exact word is still in this patent. But I want to just draw back to the essential purpose of collateral estoppel doctrine which is to not allow parties to relitigate identical issues. Not close issues, not ones that are substantially similar, identical. And I think, at least in my heart of hearts, when I look at this, I have to sit in Judge Krieger's seat who had the first opportunity to construe these claims and say, if I was Judge Krieger, would I have considered or had to consider this language? And the answer is yes because it's part of the re-exam history, it's intrinsic evidence and the diagrams and I would have had to consider it. And then number two, is it relevant? Well, I would think it would have been relevant to Judge Krieger because she was clearly on the fence on this issue of RAM being involved or not involved and ultimately went the route that it was not involved in the construction of that claim. But had she had this additional set of diagrams and this additional re-examination history, would she have had to consider it? The answer in my mind is yes and because she would have had to consider it, because she didn't have it before her, we cannot say today that the issues presented to Judge Sobral were identical to the issues presented to her. So to preserve the collateral estoppel doctrine, I would urge that you adopt the methodology incorporated in Goldenbridge. I thank both counsels. The case is taken under submission.